UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60302-CIV-COHN

LOWELL GANNON,

Magistrate Judge Seltzer

    Plaintiff,

vs.

IC SYSTEMS, INC.,

    Defendant.
_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [DE 16]. The Court has carefully considered the motion, response [DE 18], and reply [DE 20] thereto, and is otherwise fully advised in the premises. The motion became ripe on June 29, 2008.

I.  BACKGROUND

Plaintiff Lowell Gannon ("Plaintiff") filed a Complaint against IC Systems ("Defendant") for alleged violations of the Florida Consumer Collection Practices Act ("FCCPA"), § 559.72, the federal Fair Debt Collection Practices Act ("FDCPA"), and the federal Fair Credit Reporting Act ("FCRA"). In Count I, Plaintiff alleges several different violations of the FCCPA, including continuing collection attempts after Plaintiff sent a cease and desist letter to Defendant, attempting to collect a debt known to not be legitimate, re-aging the debt so its negative effect on Plaintiff's credit score lasted longer, and attempting to collect a debt while not being licensed in the State of Florida. Comp., ¶¶ 11-14. In Count II, Plaintiff alleges a violation of 15 U.S.C. § 1692c, the FDCPA ban on continuing collection attempts after Plaintiff sent a cease and desist letter to Defendant. In Count III, Plaintiff alleges a violation of the FCRA by Defendant's failure to notify the credit bureaus of the disputed nature of the account in question,

while in Count IV, Plaintiff alleges a separate FCRA violation by Defendant's re-aging of the account information. Count V does not state an independent claim for relief, but seeks a permanent injunction under the FCCPA. Following a period of discovery, Defendant has moved for summary judgment on all claims. Plaintiff opposes the motion.[1]

Most of the facts of this case are not in dispute. On June 18, 2008, Plaintiff sent a letter to Defendant asserting his rights under the FDCPA and FCRA to have Defendant cease communication with him, to note the debt as disputed, and, in bold type, the following: "Notwithstanding said verbal dispute, this account must be investigated as fraudulent insofar as I have never maintained an account and/or business relationship with your client." Letter dated June 18, 2008, attached as Exhibit A to Sue Johnson Declaration [DE 16-2], and as Plaintiff's Exhibit B to Response to Motion for Summary Judgment [DE 18-3]. On July 9, 2008, Defendant sent Plaintiff a two sentence letter in response, with an attached letter from Hulett Environmental Services, the Defendant's client, a copy of a contract between "Lowell Gannon" and Hulett, and a copy of the last service ticket.

Defendant's letter, which is the basis for this action, simply states on Defendant's letterhead:

> Our client, HULETT ENVIRONMENTAL SERV has provided the enclosed information, per your request, substantiating your responsibility for this paid debt.
> **We are a debt collector attempting to collect a debt and any information obtained will be used for that purpose**.

Letter dated July 9, 2008, attached as Exhibit C to Sue Johnson Declaration [DE 16-2], and as Plaintiff's Exhibit C to Response to Motion for Summary Judgment [DE 18-4]

---

[1] The fact discovery period for this case closed on July 2, 2009. Scheduling Order [DE 13].

(emphasis in original). Attached to this letter is a June 20, 2008 letter from Hulett to Defendant, listing Plaintiff's name, account number, and "Balance Due: $" with no balance listed. The letter references an attached "copy of the contract clearly signed by Mr. Gannon along with a copy of the service ticket for the said service." Exhibit B to Sue Johnson Declaration [DE 16-2] and Plaintiff's Exhibit C [DE 18-4]. A one page copy of a Pest Control Services Agreement dated July 7, 2006, with a balance due of $261 and a service ticket from April 6, 2007 are attached as well. Id. The record also consists of a copy of a page from Plaintiff's credit report listing an account with IC Systems, noted as "Collection Hulett Environmental Serv, Paid Account/Zero Balance," with a reported date of 10/07 and an opened date of 06/07. Exhibit A to Gannon Declaration [DE 18-2].

Defendant has submitted a declaration from Sue Johnson, Director of Legal Affairs for Defendant, who states that the account was placed for collection with Defendant by Hulett in June of 2007. Johnson Declaration, ¶ 4 [DE 16-2]. Defendant contacted Plaintiff at that time, who disputed the account. Id., ¶ 5. Ms. Johnson states that IC Systems' computer system was updated to reflect that Plaintiff disputed the debt, and that this account was "automatically reported as 'disputed' to the Credit Reporting Agencies. Id., ¶ 7. Nonetheless, Defendant received a payment from Plaintiff on September 5, 2007 for $20. Id., ¶ 8. On October 12, 2007, Plaintiff telephoned Defendant to indicate that he was going to pay off the balance that day. Id., ¶ 9. A credit card payment of $138.18 was made through Defendant's online payment system and Defendant closed the account. Id.

Plaintiff has submitted his own declaration in opposition to the motion. Plaintiff confirms that he was contacted by telephone by Defendant in June 2007 and that he disputed the account at that time. Declaration of Lowell Gannon [DE 18-2]. Plaintiff also confirms that Defendant continued to contact him in September and October of

3

2007 and that Plaintiff did first pay $20 and then $138.18, though both payments were made to stop the collection efforts. Id., ¶¶ 4-5. Plaintiff states that a few months later he learned of some accounts attributed to him that did not belong to him and he placed a fraud alert with the credit bureaus. At this time, he learned that the Defendant had not reported the pest control account as disputed. Plaintiff states that he wrote to the three credit bureaus and Defendant to dispute the pest control account, but Defendant never placed a dispute notice with the information they furnished to the credit bureaus. Id., ¶¶ 8, 14.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or

4

denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### B.  FDCPA/FCCPA CLAIMS and FACTA Immunity

Plaintiff alleges that the July 9, 2008 letter violated the FCCPA and FDCPA as an improper attempt to collect a debt after receipt of a cease and desist letter.  Defendant argues that the July 2008 letter is not an attempt to collect a debt as it does not demand payment, and, even if it was, the letter and attachments were sent to Plaintiff in compliance with the Fair and Accurate Credit Transaction Act ("FACTA").  In general, the elements of an FDCPA claim include:  "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Fuller v. Becker & Poliakoff, P.A., 192 F.Supp.2d 1361, 1366 (M.D.Fla. 2002).

Defendant contends that because its cover letter referred to the debt as a "paid

debt," plus the fact that Hulett's cover letter had no numbers after the "Balance Due" line, means that its July 9, 2008 communication was not an attempt to collect a debt. Plaintiff argues that the Court must interpret the letter and its attachments as would the "least sophisticated consumer." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985). Under this standard, Plaintiff asserts that the absence of notation of "zero" or "$0.00" next to the balance line in the letter, combined with the copy of the contract listing a balance due of $261, would lead the least sophisticated consumer to believe he still owed money. Moreover, Plaintiff notes the bold language of the letter from Defendant warning Plaintiff that "[w]e are a debt collector attempting to collect a debt and any information obtained will be used for that purpose" makes clear that the letter was an attempt to collect a debt. Defendant argues that this "mini-Miranda" language is required by the FDCPA. See 15 U.S.C. § 1692e(11).

The Court concludes that the cover letters are clear to even the least sophisticated consumer that no demand for payment was being made, but rather that the Defendant was responding to the Plaintiff's own letter, which requested an investigation of a fraudulent account in addition to the cease and desist demand. Whether or not the mini-Miranda language turns this response into an attempt to collect a debt is not an issue that need be decided in this case, as it is also clear that FACTA compliance precludes liability under the FDCPA and FCCPA, even if the July letter is viewed as demanding payment for some amount.

The relevant provisions of FACTA can be found at 15 U.S.C. § 1681g(e). Subsection (e)(1) obligated Defendant to respond to Plaintiff's June 18, 2008 letter stating that the account was fraudulent (a "business entity that has . . . accepted payment from a person who has allegedly made unauthorized use of the means of

6

identification of the victim, shall provide a copy of application and business transaction record in the control of the business entity. . . evidencing any transaction alleged to be a result of identity theft"). Subsection (e)(7) states that "No business entity may be held civilly liable under any provision of Federal, State or other law for disclosure, made in good faith pursuant to this subsection." 15 U.S.C. § 1681g(e)(7). Defendant argues that this provision precludes liability for its July letter.

Plaintiff argues that the July response by Defendant does not meet the requirements in FACTA and should not be immunized under § 1681g(e)(7). Plaintiff fails to cite the statutory provision or other authority for this argument. See Plaintiff's Response in Opposition at pp. 10-11 [DE 11].[2] FACTA does require furnishers of information to credit reporting agencies, upon a notice of dispute such as the June 18, 2008 letter from Plaintiff in this case, to conduct an investigation, report the results to the consumer reporting agency (i.e., credit bureaus), and modify or delete inaccurate information. 15 U.S.C. § 1681s-2(b). In this case, Defendant obtained evidence that the account was in fact opened by Lowell Gannon, and forwarded the results of its investigation to Plaintiff.

Although the Court finds the immunity in § 1681g(e)(7) to be clear, in that Defendant's response to Plaintiff under 15 U.S.C. § 1681g(e) cannot be the basis of liability, to the extent the conflicting obligations of the FDCPA cease and desist provision and the FACTA compliance provision are ambiguous, the Court looks for guidance to the federal agency tasked with enforcement of these statutes as to debt collectors. The Federal Trade Commission recently issued its formal opinion that a debt

---

[2] Plaintiff is perhaps referring to the obligations of a consumer reporting agency (i.e, credit bureau) upon receipt of a consumer dispute. Defendant in this case is not a consumer reporting agency.

collector does not violate the cease and desist provision of the FDCPA when responding to the consumer under FACTA where a fraudulent account is alleged. See June 23, 2009 letter from Donald S. Clark, Secretary of the Federal Trade Commission, found at http://www.ftc.gov/os/2009/07/P064803facta-adop.pdf (attached to this opinion). See also 74 Fed. Reg. 31484, 31526 (July 1, 2009) (Final Rules effective July 1, 2010, to be published at 16 C.F.R. § 660.4(e)).

The Court therefore concludes that there is no genuine issue of material fact that the July 2008 letter from Defendant did not violate the FDCPA and the FCCPA. The Court therefore will grant summary judgment to Defendant on the FDCPA claim in Count II of Plaintiff's complaint and the related claim under the FCCPA in Count I.

### C.   Remaining FCCPA Claims

Plaintiff includes a claim under the FCCPA for attempting to collect a debt while not being licensed in Florida as a consumer collection agency. Fla. Stat. § 559.553; Welch v. Florida West Coast, Inc., 816 So.2d 711, 713 (Fla. Dist. Ct. App. 2002). Defendant moves for summary judgment on this claim, asserting that it is in fact registered. In opposition to the motion, Plaintiff attaches a print-out of the Florida Office of Financial Regulation from January 15, 2009, indicating that License ID: LI0000001010186 for I C System expired on December 31, 2000. Plaintiff's Exhibit D [DE 18-5]. In reply, Defendant asserts that at some point it added the DBA name of "Adams Cooper and Marks" under License ID: LI00000211484 (for "I C System Inc."), and includes a similar printout dated December 30, 2008 showing that its license is effective through December 31, 2009, with initial effective date of March 3, 1994 [DE 20-2]. The Court concludes that there is no genuine issue of material fact that Defendant was in fact licensed in 2008 at the time of the actions in question.

8

Plaintiff has alleged another FCCPA claim within Count I that Defendant attempted to collect a debt known not to be legitimate.[3]  However, as to this claim, the evidence of the prior contract between Plaintiff and Hulett and the prior payments by Plaintiff to Defendant, combined with the ambiguous nature of the July 2008 correspondence from Defendant to Plaintiff show that Defendant had a good faith belief that the account in fact belonged to Plaintiff, and, that Defendant was not intended to collect a debt.  While the Court is aware that compliance with the FDCPA (and therefore the FCCPA) is generally one of strict liability, in that a violation cannot be avoided based upon lack of intent, on this particular claim of attempting to collect a debt known not to be legitimate, the record on summary judgment is clear that Defendant did not commit this violation as alleged.  As discussed in the prior section, the July 2008 correspondence from Defendant to Plaintiff does not appear to be a demand for payment of a particular amount, and, Defendant had proof that the account belonged to Plaintiff who had made payments to Defendant on this same account nine months prior.  The Court concludes that Defendant is entitled to summary judgment on this part of the claim in Count I.

### D.  FCRA Claim on Failure to Report Dispute

Plaintiff asserts claims that Defendant violated the FCRA by furnishing inaccurate information to the credit bureaus by failing to report the disputed nature of the account in question.  Defendant argues that there is no private right of action under 15 U.S.C. §1681s-2(a).  While this is true, as clearly stated in § 1681s-2(c)(1), Plaintiff did not limit its claim in this case to  §1681s-2(a), but rather argues that its claim is brought pursuant

---

[3] The FCCPA claim in Count I for "re-aging" the debt from June of 2007 to October of 2007 will be discussed in the next section along with Count IV under the FCRA.

9

to §1681s-2(b). Although the Complaint is silent as to which provision of the Fair Credit Reporting Act is at issue, the Complaint did sufficiently provide notice to Defendant that the claim is for providing incomplete information to a consumer reporting agency. Section §1681s-2(b) requires furnishers of information to consumer reporting agencies, upon notice from a consumer reporting agency, to investigate disputed information and modify, delete or block information that is incomplete or inaccurate. Saunders v. Branch Banking and Trust Co. of VA, 526 F.3d 142, 148-150 (4th Cir. 2008); Green v. RBS Bank, 288 Fed. Appx. 641, 642 (11th Cir. 2008); Rambarran v. Bank of America, 609 F.Supp.2d 1253, 1255 (S.D.Fla. 2009); Agostinho v. Capital One Services, Inc., 2007 WL 2113602, Case No. 07-20674-CIV-COHN (July 23, 2007). In Saunders, the Fourth Circuit Court of Appeals upheld a jury award where an account was not reported as disputed because a reasonable jury could conclude that the "decision to report the debt without any mention of a dispute was misleading in such a way and to such an extent that it can be expected to have an adverse effect." 526 F.3d at 150.

  Defendant next argues that Plaintiff has not provided any evidence that Defendant received a report of a dispute from a consumer reporting agency, and, that Plaintiff has not submitted admissible evidence that Defendant reported any incomplete or inaccurate information to a consumer reporting agency. On this first point, Plaintiff states in his declaration that his June 18, 2008 letter was also sent to the three major consumer reporting agencies. Plaintiff's Declaration, ¶ 8 [DE 18-2]. On the second point, Defendant asserts that the page allegedly attached from Plaintiff's credit report showing this account without a notation of consumer dispute is inadmissable hearsay. It is true that the page is not self-authenticating. However, Plaintiff states in his declaration that he has reviewed his credit reports and for the entry regarding

10

Defendant there is no statement that the account is disputed.  Plaintiff's Declaration, ¶ 14.[4]  Thus, Plaintiff has presented sufficient evidence that there is a genuine issue of material fact as to these issues.

Although not cited by a party, upon further research by the Court on the legal question presented, whether a furnisher must "report the dispute is subsumed within the question whether it conducted a reasonable investigation."  Scheel-Baggs v. Bank of America, 575 F.Supp.2d 1031, 1040 (W.D.Wis. 2008).  In this case, Defendant asserts that it did investigate the account, and found from the underlying creditor that a written contract existed and that Plaintiff had made some payments on that contract.  However, Plaintiff contends that he made those payments simply to stop collection efforts, and that failure to report to the consumer reporting agencies that the account is disputed is a failure to modify incomplete information in violation of §1681s-2(b).

The Court concludes that there remains disputed issues of material fact on Plaintiff's claim in Count III that Defendant failed to report accurate information pursuant to §1681s-2(b).  Plaintiff will need to prove that Defendant received a dispute from a consumer reporting agency and then reported the debt without any mention of a dispute so as to make the information misleading in such a way and to such an extent that it can be expected to have an adverse effect on Plaintiff's credit report or credit score.[5]  In order to recover anything more than actual damages and attorney's fees, Plaintiff will also have to prove a willful violation of this section.  15 U.S.C. §§ 1681n and 1681o.

---

[4] Though the entry is marked Paid Account/Zero Balance [DE 18-2].

[5] Plaintiff is not entitled to any extension of discovery as these issues should have been the subject of discovery during the recently concluded discovery period.

### E. FCRA Claim for Re-Aging Account

Plaintiff also asserts a claim for a violation of the FCRA and FCCPA by Defendant's "re-aging" the account from June of 2007 to October of 2007. Assuming for purposes of this motion that such an action violates §1681s-2(b) of the FCRA and the FCCPA, the Court can conclude based upon the undisputed factual record that Plaintiff last paid the account in October 2007. Although Plaintiff alleges that he only made the payment to stop collection activities, there is nothing incomplete or inaccurate in Defendant's reporting of the last action on this account to be October of 2007, the date when Plaintiff concedes he made a payment on the account. While Plaintiff's motivation in making the payment may be relevant on the issue above of whether the account was Plaintiffs for purposes of disputing the account, such motivation is not relevant in deciding that Defendant did not inaccurately report that the last action on the account was in October of 2007. Therefore, the Court will grant summary judgment on these claims.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion for Summary Judgment [16] is hereby **GRANTED in part** and **DENIED in part**;

2.  Summary Judgment is granted to Defendant as to Counts I, II, IV and V[6] and denied as to Count III.

---

[6] The "claim" in Count V seeks a permanent injunction under the FCCPA (Count I) and does not contain an independent cause of action. This grant of summary judgment is without prejudice to Plaintiff seeking the remedy of a permanent injunction, if appropriate, if Plaintiff prevails as to Count III.

3. This case remains set for trial on the two-week period commencing September 29, 2009, and Calendar Call on September 24, 2009, pursuant to the Order entered on March 2, 2009 [DE 8]. The remaining pretrial deadlines are set forth in the Scheduling Order [DE 13].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of July, 2009.

JAMES I. COHN
United States District Judge

Copies furnished to:

counsel of record on CM/ECF